The BOARD OF EDUCATION OF INDEPENDENT SCHOOL DISTRICT NUMBER 2 OF NOBLE COUNTY, Oklahoma, Petitioner,

v.

Lester R. MARIS, Judge of the District Court of Noble County, Oklahoma, Respondent.

No. 43647.

Supreme Court of Oklahoma.

Aug. 27, 1969.

J. Harry Johnson, Oklahoma City, for petitioner.

Kenneth Reed, Perry, for respondent.

BLACKBIRD, Justice.

This original action involves the judgment of the Respondent Judge, sitting as the District Court in Noble County, reversing the order of the County Superintendent of Schools of said County, denying applications to said Superintendent for five students residing in Independent School District Number 2 (hereinafter referred to as the "Billings District") to attend school in said County's Independent School District Number 1 (hereinafter referred to as the "Perry District") during the 1969–70 school year.

Although the petition filed in this court resembles, in some respects, an application for a writ of certiorari, as the record of the District Court's trial de novo on the appeal from the County Superintendent's order has (since the filing of said petition) been furnished us, as was done in Board of Education of Independent School District No. 1 v. Clendenning, Okl., 431 P.2d 382, we will follow the procedure adopted there of issuing no formal writ of that character.

The applicants and students, above referred to, are: Mrs. Leo Dolezal, guardian of students, Edward Charles Dolezal and David Brian Dolezal; Mrs. Zella Rose Emery, mother of students, Mary and Alice Emery; and Mrs. Melvin Crane, mother of Billie Jean Crane.

For their applications to the County Superintendent, all three of the applicants used the same mimeographed form, which contains the representation that " * * * it is to the best interest of said children (referring to the above named students) that they be permitted to attend the (Perry)

school * * *, for the reasons as follows: * * *". This representation is followed by a blank for setting forth therein the "reasons" supporting that stated conclusion. In Mrs. Dolezal's application, this blank contained only the following words: "Topography and health of the children." Attached to her application were two written statements, each of which was entitled "MEDICAL CERTIFICATE", signed by a Dr. M. Each "certificate" pertained to a different one of the two above named Dolezal boys, but contained the following identical statement: "I believe it would be detrimental to this boy's learning situation and emotional health if he were forced to attend a school that was not of his choice."

In Mrs. Emery's application, the blank provided for stating the reasons why it "is to the best interest" of the applicant's children for them to be permitted to attend school in the Perry District contained only the following words, abbreviation, and punctuation: "Dr's recommendation—Topography etc." Attached to this application were short letters addressed to the County School Superintendent, signed by a Dr. B., expressing his "sincere opinion" that each of the Emery girls' interests "can best be served in the Perry School system, * * *". There was no doctor's statement or "certificate" accompanying Mrs. Crane's application, and the blank space in it for setting forth the reasons "it is to the best interest * * *" of the daughter, Billie Jean, to be permitted to attend school at Perry was filled in with the following: "Road Conditions in the wintertime plus the distance she would have to ride the bus."

It is the position of the petitioner herein, generally and briefly stated, that neither the above described applications, nor the evidence introduced before the Respondent District Judge upon the applicants' appeal from the County Superintendent's orders denying said applications, constitute a sufficient showing to entitle the applicants to have their applications granted under Tit. 70, O.S.1965 and 1968 Supp., §

8–3, which, in pertinent part, reads as follows:

"(a) The county superintendent of schools shall grant an application for transfer of a child from the district in which such child resides to another school district furnishing instruction in the grade he is entitled to pursue if (1) * * *

"(2) the topography of the district in which the pupil resides, or the health of the child is shown by a certificate of any person licensed under Oklahoma law to practice a healing art, is such that the best interests of the child cannot be served by the child's attendance in the district in which he resides, * * *

* * * * * *

No transfer shall be granted for any reason not hereinbefore specified.

* * * * * *"

An examination of the Emery and Crane applications is, of itself, sufficient to impel the conclusion that they fall far short of showing that the health of the children they concerned "was such that * * *" those children's best interests "cannot be served by * * *" their attending school in the Billings School District. It is noted that Dr. B.'s short letters attached to the Emery application made no mention of anything pertaining to the Emery girls' health; and, after a thorough examination of the evidence introduced in support of these applications at the trial de novo held before the Respondent Judge, we do not think it supplied that deficiency of those applications. Mrs. Emery testified there, on direct examination, that her daughters said they would quit school before they would attend the Billings School, and then she gave the following testimony in answer to the following questions by her attorney:

"Q: And do you think, knowing the girls like you do—do you think that would affect them emotionally and their physical health if you forced them to go up there?

"A: I know it will because that was the reason that I took them out of Oak Dale before Oak Dale and Billings consolidated.

"Q: You were having emotional problems with them?

"A: That is right. The oldest girl almost had a nervous breakdown over that.

\* \* \* \* \* \*"

There was no showing that Mrs. Emery was one of those persons referred to in Section 8–3, supra, as "licensed under Oklahoma law to practice a healing art, \* \* \*". Nor do we think that her testimony shows that either one of her daughters' present health is such that her best interests cannot be served by attending school in the Billings School District, assuming, without deciding, that such testimony would constitute a sufficient substitute for the certificate described in the above quoted portion of said statute.

While Mrs. Crane, who attached no purported medical certificate to her application for transfer, gave no testimony herself concerning the health of her daughter, Billie Jean, a stipulation was entered into, at the close of her testimony, which appears to have been intended to extend its scope to include the substantial equivalent of the Dolezal testimony, to support her application. After examining Dolezal's testimony, however, we think it, too, is insufficient to meet the statute's requirement of a health certificate.

 Nor do we think the so-called "medical certificates" attached to Mrs. Dolezal's application for her wards' transfer from the Billings to the Perry School District constituted a compliance with Sections 8–3, supra. On their face, these writings do not purport to represent that there is anything about attending school in the Billings District that, because of these childrens' health, would make it detrimental to their best interests, other than the fact that it is not their "choice" to do so. Nor does Dolezal's testimony, when examined and analyzed, have any other or different substance or implication. We submit that if the health certificate, required by the above quoted statute, had been intended by the Legislature to include no more than a medical opinion concerning the effect on a child's "emotional health" of not obtaining his own "choice" in the matter of a school to attend, such requirement would, indeed, be a mockery and would constitute a rather empty, and ineffective, restriction. We do not think it was the contemplation of the Legislature to make such a vain, and substantially useless, requirement. We held in the Clendenning case, supra, that the County Superintendent's determination as to the best interests of the child, must be on the basis of one of the reasons *specifically* set forth in Section 8–3, supra.

██ Nor do we think that the showing made with reference to the topography of the Billings School District was sufficient to meet the requirement of said section as a ground for granting any of the applications. While there was testimony indicating that some, if not all, of the children involved live closer to the Perry School, than to the Billings School, and that a longer, and perhaps more disagreeable school bus trip would be required for transportation to the latter, than to the former school, it is our opinion that all such testimony pertains to the matter of "convenience", which we said in Clendenning, supra, is not a reason for transfer, under the statute here involved. We also there held:

"The specific enumerated reasons set forth in 70 O.S.1965 Supp. § 8–3 are the only grounds upon which a transfer may be granted by a county superintendent pursuant to said statutory provision."

See also Independent School District No. 35 of Cherokee County v. Doty, Okl., 448 P.2d 846.

In accord with the foregoing, we hold that none of the transfers involved herein was authorized by the provisions of Section 8–3, supra; that the County Superintendent correctly denied the applications

therefor; and that the judgment of the Respondent Judge, sitting as the District Court in Noble County, erred in countermanding said Superintendent's orders. Said judgment is therefore vacated and set aside, and said Judge is hereby enjoined, restrained and prohibited, as the District Court in said County, from enforcing or seeking to enforce said judgment.

Writ granted.

IRWIN, C. J., and WILLIAMS, JACKSON and McINERNEY, JJ., concur.

DAVISON, J., concurs as to the Emery and Crane applications, but dissents as to the Dolezal application.

HODGES, J., dissents.